

FILED

NOV 20 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Amanda Garcia (Bar No. 248462)
2  Andrea Kopecky (Bar No. 276366)
   SAN FRANCISCO BAYKEEPER
3  785 Market Street, Suite 850
   San Francisco, California 94103
4  Telephone: (415) 856-0444
   Facsimile: (415) 856-0443
5  Email: amanda@baykeeper.org
6  Email: andrea@baykeeper.org

7  Attorneys for Plaintiff:
   BAYKEEPER
8

9
                 UNITED STATES DISTRICT COURT                    JCS
10
                NORTHERN DISTRICT OF CALIFORNIA
11
                       OAKLAND DIVISION
12

13  BAYKEEPER, a non-profit corporation,        Civil No. 12        5955
14                      Plaintiff,
15          v.                              COMPLAINT FOR DECLARATORY AND
                                            INJUNCTIVE RELIEF AND CIVIL
16                                          PENALTIES
17  PACIFIC STEEL CASTING CO.,              (Federal Water Pollution Control Act, 33
                                            U.S.C. §§ 1251 et. seq.)
18                      Defendant.
19
20
21
22
23
24
25
26
27
28

COMPLAINT

1    Baykeeper, by and through its counsel, hereby alleges:

2    **I.    JURISDICTION AND VENUE**

3    1.    This is a civil suit brought under the citizen suit enforcement provisions of the Federal
4    Water Pollution Control Act, 33 U.S.C. section 1251 *et seq*. (the "Clean Water Act" or the "CWA").
5    This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to
6    section 505(a)(1) of the CWA, 33 U.S.C. section 1365(a)(1), 28 U.S.C. section 1331 (an action for
7    declaratory and injunctive relief arising under the Constitution and laws of the United States), and 28
8    U.S.C. section 2201.

9    2.    On September 13, 2012, Baykeeper provided notice of violations of the CWA by
10   Defendant Pacific Steel Casting Company ("Pacific Steel") and of Baykeeper's intent to file suit
11   against Pacific Steel ("Notice Letter") to the Administrator of the United States Environmental
12   Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of
13   the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional
14   Water Quality Control Board, San Francisco Bay Region ("Regional Board"); the U.S. Attorney
15   General (collectively "state and federal agencies"), and Pacific Steel as required by the CWA, 33
16   U.S.C. § 1365(b)(1)(A). A copy of the Notice Letter is attached as Exhibit 1.

17   3.    More than sixty days have passed since the Notice Letter was mailed to Pacific Steel
18   and the state and federal agencies. Neither the EPA nor the State of California has commenced or is
19   diligently prosecuting a court action to redress the violations alleged in this complaint. No claim in
20   this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33
21   U.S.C. § 1319(g).

22   4.    Venue is proper in the Northern District of California pursuant to section 505(c)(1) of
23   the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial
24   district.

25   **II.    INTRADISTRICT ASSIGNMENT**

26   5.    Intradistrict assignment of this matter to the Oakland Division of the Court is
27   appropriate pursuant to Civil Local Rule 3-2(c). The events or omissions which give rise to

28

COMPLAINT                                                                                                    Page 1

1    Baykeeper's claims occurred in Alameda County, which is under the jurisdiction of the Oakland
2    branch of the Northern District of California.

3    **III.    INTRODUCTION**

4         6.       This complaint seeks relief for alleged unlawful discharges of pollutants from Pacific
5    Steel's facility, located at 1333 Second Street, Berkeley, California (the "Facility"), in violation of the
6    Clean Water Act and the State of California's General Permit No. CAS000001, Water Quality Order
7    No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit"), and into
8    waters of the United States.

9         7.       Violations of the Clean Water Act and the Industrial Stormwater Permit by numerous
10   industrial sites are recognized as a leading cause of significant, cumulative impacts to the water quality
11   of San Francisco Bay. With every rainfall event, hundreds of millions of gallons of polluted rainwater
12   flow from local industrial facilities, such as the Facility, and pour into storm drains, into local
13   tributaries, and into the Bay. The consensus among agencies and water quality specialists is that
14   stormwater pollution accounts for more than half of the total pollution entering the marine
15   environment each year.

16        8.       Stormwater runoff from industrial sites such as the Facility causes harm to humans and
17   aquatic life. In particular, stormwater contains suspended sediment and heavy metals such as lead,
18   mercury, copper, iron, zinc, tin, nickel, and aluminum. Exposure and ingestion of heavy metals can
19   cause health problems in people and aquatic animals, including neurological and reproductive effects.
20   Fish are widely used to evaluate the health of aquatic systems because pollutants accumulate in fish,
21   which are an important part of aquatic food chains. Heavy metals have been shown to alter
22   physiological activity in tissues and blood of fish.

23        9.       High concentrations of suspended solids ("TSS") degrade optical water quality by
24   reducing water clarity and decreasing light available to support photosynthesis. TSS have been shown
25   to alter predator-prey relationships (for example, turbid water might make it difficult for fish to see
26   their prey). Deposited solids alter habitat for fish, aquatic plants, and benthic organisms. TSS can also
27   be harmful to aquatic life because numerous pollutants, including metals and PAHs, are adsorbed onto
28

COMPLAINT                                                                                          Page 2

**1**    TSS. Thus, higher concentrations of TSS mean higher concentrations of toxins associated with those

**2**    sediments.

**3**          10.      Stormwater from steel foundries such as the Facility contains heavy metal pollutants

**4**    such as aluminum, copper, iron, and zinc, as well as high concentrations of suspended solids.

**5**    Inorganic sediments, including settleable matter and suspended solids, have been shown to negatively

**6**    impact species richness, diversity, and total biomass of filter feeding aquatic organisms on bottom

**7**    surfaces. Metals such as copper and iron have been shown to accumulate in aquatic organisms and

**8**    cause negative effects on physiology and reproduction.

**9**    **IV.**     **PARTIES**

**10**         11.      Plaintiff Baykeeper is a non-profit public benefit corporation organized under the laws

**11**    of the State of California with its main office in San Francisco, California. Baykeeper members live

**12**    and/or recreate in and around the San Francisco Bay area. Baykeeper is dedicated to protecting the

**13**    water quality of San Francisco Bay for the benefit of its ecosystems and communities. To further

**14**    these goals, Baykeeper actively seeks federal and state agency implementation of the Clean Water Act,

**15**    and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

**16**         12.      Members of Baykeeper, including citizens, taxpayers, property owners, and residents,

**17**    live, work, travel, and recreate in or near San Francisco Bay and its tributaries, into which Pacific Steel

**18**    discharges pollutants. These Baykeeper members use and enjoy San Francisco Bay and its tributaries

**19**    for recreational, educational, scientific, conservation, aesthetic, and spiritual purposes. Pacific Steel's

**20**    discharges of stormwater containing pollutants impair each of these uses. Thus, the interests of

**21**    Baykeeper's members have been, are being, and will continue to be adversely affected by Pacific

**22**    Steel's failure to comply with the Clean Water Act and the Industrial Stormwater Permit.

**23**         13.      Defendant Pacific Steel is a corporation that is incorporated in the state of California,

**24**    with its principal place of business located in Berkeley, California. Pacific Steel operates a facility

**25**    that processes and manufactures materials containing heavy metals.

**26**    **V.**      **REGULATORY BACKGROUND**

**27**         **Clean Water Act**

**28**

1    14.    CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into
2    waters of the United States unless the discharge is in compliance with various enumerated CWA
3    sections. Among other things, CWA section 301(a) prohibits discharges not authorized by, or in
4    violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued
5    pursuant to CWA section 402, 33 U.S.C. § 1342.

6    15.    CWA section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own
7    EPA-approved permit program for discharges. In California, the State Board and its nine Regional
8    Boards have approval from EPA to administer an NPDES permit program for the State. The State
9    Board and Regional Boards issue individual and general NPDES permits regulating water pollutant
10    discharges from various categories of dischargers.

11    16.    CWA section 402(p), 33 U.S.C. § 1342(p), requires that NPDES permits be issued for
12    stormwater discharges associated with industrial activities.

13    17.    CWA section 301(b) requires that, by March 31, 1989, all point source dischargers,
14    including those discharging polluted stormwater, must achieve technology based effluent limitations
15    based upon Best Available Technology Economically Achievable ("BAT") for toxic and
16    nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for
17    conventional pollutants. *See* 33 U.S.C. § 1311(b); 40 C.F.R. §§ 125.3(a)(2)(ii), 125.3(a)(2)(iii),
18    125.3(a)(2)(iii).

19    18.    CWA section 505(a)(1) provides for citizen enforcement actions against any "person,"
20    including individuals, corporations, or partnerships, for violations of NPDES permit requirements and
21    for unpermitted discharges of pollutants. 33 U.S.C. § 1365(a)(1); *see* 33 U.S.C. § 1362(5).

22    19.    CWA section 505(a) authorizes a citizen suit action for injunctive relief. 33 U.S.C. §
23    1365(a).

24    20.    CWA violators are subject to an assessment of civil penalties of up to $32,500 for all
25    violations occurring on or after March 15, 2004 through January 12, 2009, and $37,500 per day per
26    violation for violations occurring after January 12, 2009. CWA § 309(d), 33 U.S.C. § 1319(d), and 40
27    C.F.R. §§ 19.1-19.4.

28    **State Regulations**

1   21.     Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality

2   Standards, including water quality objectives and beneficial uses for navigable waters of the United

3   States. The CWA prohibits discharges from causing or contributing to a violation of such state Water

4   Quality Standards. *See* 33 U.S.C. § 1311(b)(1)(c), 40 C.F.R. §§ 122.4(a) and (d), 40 C.F.R. §

5   122.44(d)(1).

6   22.     The State of California regulates water quality through the State Board and nine

7   Regional Boards, and each Regional Board maintains a separate Water Quality Control Plan which

8   contains Water Quality Standards for water bodies within its geographic area.

9   23.     The San Francisco Bay Regional Water Quality Control Board has adopted the "San

10  Francisco Bay Basin (Region 2) Water Quality Control Plan (Basin Plan)" (hereafter "Basin Plan"), as

11  amended by Resolution No. R2-2010-0100, setting forth the beneficial uses and Water Quality

12  Standards for San Francisco Bay and its tributaries.

13  24.     The Basin Plan sets forth, among other things, narrative Water Quality Standards for

14  floating material, oil and grease, sediment, settleable matter, and suspended materials, and sets forth

15  numeric Water Quality Standards for pH, arsenic, cadmium, chromium VI, copper, cyanide, lead,

16  mercury, nickel, selenium, silver, tributyltin, zinc, and PAHs. *See* Basin Plan §§ 3.3.6, 3.3.7, 3.3.9,

17  3.3.12-3.3.14, 3.3.21, and Table 3-3. The Basin Plan also includes site specific objectives ("SSO"),

18  which are Water Quality Standards for specific sites, for certain pollutants of concern, including

19  copper and nickel. Basin Plan Table 3-3A.

20  25.     In addition, EPA has promulgated Water Quality Standards for toxic priority pollutants

21  in all California water bodies (the "California Toxics Rule" or "CTR"), which apply to San Francisco

22  Bay and its tributaries, unless expressly superseded by the Basin Plan. 65 Fed. Reg. 31682 (May 18,

23  2000), 40 C.F.R. § 131.38.

24              **The General Industrial Stormwater Permit**

25  26.     In California, the State Board has elected to issue a single, statewide general permit

26  applicable to all stormwater discharges associated with industrial activity. *See* NPDES General Permit

27  No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as

28  amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit"). The Industrial Stormwater

COMPLAINT                                                                                      Page 5

1  Permit is an NPDES permit pursuant to CWA section 402(p), 33 U.S.C. § 1342(p). To discharge
2  stormwater lawfully in California, industrial dischargers must secure coverage under the Industrial
3  Stormwater Permit and comply with its terms or obtain and comply with an individual NPDES permit.
4  Industrial Stormwater Permit, pg II.

5      27.    Violations of the Industrial Stormwater Permit are also violations of the CWA.
6  Industrial Stormwater Permit, Order Part C(1).

7      28.    The Industrial Stormwater Permit contains certain absolute prohibitions. Discharge
8  Prohibition A(1) of the Industrial Stormwater Permit prohibits the direct or indirect discharge of
9  materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by
10  an NPDES permit, to the waters of the United States. Industrial Stormwater Permit, Order Part A(1).
11  Discharge Prohibition A(2) of the Industrial Stormwater Permit prohibits stormwater discharges that
12  cause or threaten to cause pollution, contamination, or nuisance. *Id.* at Order Part A(2). Receiving
13  Water Limitation C(1) of the Industrial Stormwater Permit prohibits discharges that adversely impact
14  human health or the environment. *Id.* at Order Part C(1). Receiving Water Limitation C(2) of the
15  Industrial Stormwater Permit prohibits discharges that cause or contribute to an exceedance of any
16  applicable water quality standard contained in a Statewide Water Quality Control Plan or the
17  applicable Regional Board's Basin Plan. *Id.* at Order Part C(2).

18      29.    Under the CWA and the Industrial Stormwater Permit, dischargers must employ
19  measures to reduce or eliminate stormwater pollution that constitute BAT and BCT. 33 U.S.C. §
20  1311(b); Industrial Stormwater Permit, Order Part B(3). EPA has developed Benchmarks that are
21  objective guidelines to evaluate whether a permittee's Best Management Practices ("BMPs") achieve
22  compliance with the BAT/BCT standards as required by Effluent Limitation B(3). *Id.*; NPDES Storm
23  Water Multi-Sector General Permit for Industrial Activities ("Multi-Sector Permit"), 65 Federal
24  Register 64746, 64766 (2000); Multi-Sector Permit, 73 Federal Register 56572, 56573 (2008)
25  (incorporating Fact Sheet, p. 103, available at http://www.epa.gov/npdes/stormwater/msgp).

26      30.    Dischargers must develop and implement a Storm Water Pollution Prevention Plan
27  ("SWPPP") at the time industrial activities begin. Industrial Stormwater Permit, Section A(1)(a) and
28  Order Part E(2). The SWPPP must identify and evaluate sources of pollutants associated with

COMPLAINT                                                              Page 6

1  industrial activities that may affect the quality of storm and authorized non-stormwater discharges
2  from the facility. *Id.* at Section A(2). The SWPPP must identify and implement site-specific BMPs to
3  reduce or prevent pollutants associated with industrial activities in stormwater and authorized non-
4  stormwater discharges. *Id.* The SWPPP must include BMPs that achieve pollutant discharge
5  reductions attainable via BAT and BCT. *Id.* at Order Part B(3).

6       31.     The SWPPP must include: a narrative description and summary of all industrial
7  activity, potential sources of pollutants, and potential pollutants; a site map indicating the stormwater
8  conveyance system, associated points of discharge, direction of flow, areas of actual and potential
9  pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and
10  pollutant control measures; a description of stormwater management practices; a description of the
11  BMPs to be implemented to reduce or prevent pollutants in stormwater discharges and authorized non-
12  stormwater discharges; the identification and elimination of non-stormwater discharges; the location
13  where significant materials are being shipped, stored, received, and handled, as well as the typical
14  quantities of such materials and the frequency with which they are handled; a description of dust and
15  particulate-generating activities; and a description of individuals and their current responsibilities for
16  developing and implementing the SWPPP. Industrial Stormwater Permit, Sections A(1-10).

17       32.     The Industrial Stormwater Permit also requires facility operators to properly operate
18  and maintain any facilities and systems of treatment and control installed or used to achieve
19  compliance with the conditions of the Industrial Stormwater Permit and requirements of the SWPPP at
20  all times. Industrial Stormwater Permit, Section C: Standard Provisions. The SWPPP and site maps
21  must be assessed annually and revised as necessary to insure accuracy and effectiveness. *Id.* at
22  Section A(1) and Sections B(3-4).

23       33.     Facility operators are required to develop and implement a monitoring and reporting
24  program ("MRP") when industrial activities begin at a facility. Industrial Stormwater Permit at
25  Section B: Monitoring Program and Reporting Requirements (1) and Order Part E(3). The MRP must
26  ensure that stormwater discharges are in compliance with the Discharge Prohibitions, Effluent
27  Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit. *Id.* at
28  Section B(2). The MRP must ensure that practices at the facility to prevent or reduce pollutants in

COMPLAINT                                                        Page 7

1  stormwater and authorized non-stormwater discharges are evaluated and revised to meet changing
2  conditions at the facility, including revision of the SWPPP. *Id.*

3      34.    Pursuant to the monitoring and reporting requirements of the Industrial Stormwater
4  Permit, facility operators must conduct ongoing visual observations of stormwater and non-stormwater
5  discharges and record responsive measures taken to eliminate unauthorized non-stormwater and to
6  reduce or prevent pollutants in stormwater and authorized non-stormwater discharges. Industrial
7  Stormwater Permit at Sections B(3-4). Facility operators must collect samples of stormwater
8  discharges from all locations where stormwater may be discharged from the facility. *Id.* at Sections
9  B(5) and (7). Stormwater samples must be analyzed for pH, total suspended solids, total organic
10  carbon (or oil and grease as a substitute), specific conductance, and toxic chemicals and other
11  pollutants which are likely to be present in significant quantities in stormwater discharging from the
12  facility. *Id.* at Section B(5).

13  **VI.    STATEMENT OF FACTS**

14      35.    Pacific Steel operates a facility located in Berkeley, California, at 1333 Second Street
15  (the "Facility").

16      36.    The Facility is regulated by the Industrial Stormwater Permit.

17      37.    The Facility is a steel foundry. Operations generally include, but are not limited to, the
18  following: 1) designing and manufacturing steel castings, which contain heavy metals, 2)
19  transportation of materials on and off site, 3) storage of waste and processed materials, including
20  heavy metals, and 4) vehicle and equipment operation.

21      38.    Some operations at the Facility occur outdoors and are causing pollutants to be exposed
22  to rainfall.

23      39.    Vehicles and equipment at the Facility expose many other sources of pollution to the
24  elements, including gasoline, diesel fuel, anti-freeze, battery fluids, and hydraulic fluids.

25      40.    The types of pollutants that the Facility releases into the immediate environment
26  include, among others: dust, debris, and total suspended solids ("TSS"); toxic metals such as
27  aluminum, copper, iron, lead, and zinc; petroleum products including oil, gasoline, grease, and diesel
28  fuel; and chemical admixtures, battery fluids, acids, solvents, and pH-affecting substances.

COMPLAINT                                                    Page 8

41.     The industrial materials stored and the pollutants generated at the Facility are exposed to stormwater flows.

42.     Activities at the Facility generate significant dust and particulate matter, which contain pollutants and settle on surfaces within the Facility and on the roof. During rain events, this pollution washes off of those surfaces and into nearby storm drains which discharge to San Francisco Bay.

**Pacific Steel's Activities Contributing to CWA Violations**

43.     Pacific Steel has not developed and/or implemented an adequate SWPPP at the Facility.

44.     Pacific Steel has not developed and/or implemented BMPs that adequately minimize the exposure of pollutants to stormwater at the Facility.

45.     Pacific Steel has not developed and/or implemented BMPs at the Facility that adequately control and minimize polluted runoff from the Facility.

46.     Pacific Steel has not developed and/or implemented BMPs at the Facility that adequately treat and remove pollutants in stormwater prior to discharge.

47.     Pacific Steel has not developed and/or implemented adequate measures to reduce or eliminate stormwater pollution that constitute the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Pollutant Control Technology ("BCT").

48.     Pacific Steel has not developed and/or implemented BMPs at the Facility to meet EPA Benchmarks or applicable Water Quality Standards.

49.     Pacific Steel has not adequately evaluated and revised its SWPPP for the Facility to address these failures. Pacific Steel has also failed to properly operate and maintain the structures and systems that have been put in place at the Facility to achieve compliance with the Industrial Stormwater Permit and its SWPPP requirements.

50.     Pacific Steel has not developed and/or implemented an adequate MRP at the Facility.

51.     Pacific Steel's monitoring and reporting activities have not resulted in practices that adequately reduce or prevent pollutants from discharging from the stormwater flows from the Facility.

52.     Pacific Steel's monitoring activities have not effectively identified compliance problems at the Facility or resulted in effective revision of the SWPPP.

53.     Due to Pacific Steel's lack of effective pollution prevention measures, its failure to

COMPLAINT                                                                                          Page 9

1 implement effective BMPs, and its failure to implement an effective monitoring and reporting
2 program, stormwater from the Facility becomes polluted with many constituents. Dust, debris, toxic
3 metals such as aluminum, copper, iron, and zinc; petroleum products including fuels and oil, acids and
4 solvents; and TSS and pH-affecting substances become entrained in stormwater when such water
5 flows over and across the outdoor areas of the Facility. This polluted stormwater is discharged into
6 San Francisco Bay, a water of the United States, via storm drains near the Facility.

7      54.    Pacific Steel's own stormwater sampling indicates that Pacific Steel's discharges of
8 stormwater are consistently contaminated with higher levels of pollutants than are permissible under
9 the Industrial Stormwater Permit.

10      55.    Pacific Steel's own stormwater sampling indicates that Pacific Steel's discharges of
11 stormwater are consistently contaminated with higher levels of pollutants than are permissible under
12 the Basin Plan.

13      56.    Pacific Steel's own stormwater sampling indicates that Pacific Steel's discharges of
14 stormwater are consistently contaminated with higher levels of pollutants than are permissible under
15 the CTR.

16      57.    Pacific Steel's own stormwater sampling indicates that Pacific Steel's discharges of
17 stormwater are consistently contaminated with higher levels of pollutants than are consistent with
18 BMPs that constitute BAT and/or BCT.

19      58.    Pacific Steel's repeated stormwater exceedances of EPA Benchmarks over the past five
20 years for pollutants including total suspended solids ("TSS"), pH, aluminum, copper, iron, and zinc
21 indicate that Pacific Steel has failed and continues to fail to meet BAT/BCT.

22 **VII.   CLAIMS**

23 **FIRST CLAIM FOR RELIEF**

24 **Discharges in Violation of Permit Prohibitions of the Industrial Stormwater Permit**
25 **(Violations of 33 U.S.C. § 1311)**

26      59.    Plaintiff incorporates the allegations contained in all preceding paragraphs as though
27 fully set forth herein.

28      60.    Since at least September 13, 2007, Pacific Steel has been discharging polluted

COMPLAINT                                                      Page 10

1 | stormwater from the Facility in violation of the prohibitions of the Industrial Stormwater Permit
2 | during every significant rain event (defined by the United States Environmental Protection Agency as
3 | a rainfall event generating 0.1 inches or more of rain). *See* Exhibit 1, Notice Letter at Attachment 3.

4 |     61.    The polluted stormwater discharged from the Facility during every significant rain
5 | event contains pollutants harmful to fish, plant, bird life, and human health that have adversely
6 | affected, and continue to adversely affect, human health and the environment in violation of Receiving
7 | Water Limitation C(1) of the Industrial Stormwater Permit.

8 |     62.    The discharges of polluted stormwater from the Facility have in the past caused, and
9 | will continue to cause, pollution, contamination, and/or nuisance to the waters of the United States in
10 | violation of Discharge Prohibition A(2) of the Industrial Stormwater Permit and the Water Quality
11 | Standards set forth in the Basin Plan.

12 |     63.    The discharges of polluted stormwater from the Facility have in the past caused or
13 | contributed to, and continue to cause or contribute to, exceedances of Water Quality Standards in
14 | violation of Receiving Water Limitation C(2) of the Industrial Stormwater Permit including sediment,
15 | settleable matter, suspended materials, copper, and zinc.

16 |     64.    Each day since at least September 13, 2007 that Pacific Steel has discharged polluted
17 | stormwater from the Facility in violation of the Industrial Stormwater Permit is a separate and distinct
18 | violation of CWA section 301(a), 33 U.S.C. § 1311(a).

19 |     65.    By committing the acts and omissions alleged above, Pacific Steel is subject to an
20 | assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and
21 | 1365.

22 |     66.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §
23 | 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm
24 | Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at
25 | law.

26 |     67.    An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an
27 | actual controversy exists as to the rights and other legal relations of the Parties.

28 |     Wherefore, Plaintiff prays for judgment against Pacific Steel as set forth hereafter.

COMPLAINT                                                           Page 11

1

## SECOND CLAIM FOR RELIEF

2

**Discharge in Violation of Effluent Limitations of the Industrial Stormwater Permit**

3

**(Violations of 33 U.S.C. § 1311)**

4      68.      Plaintiff incorporates the allegations contained in all preceding paragraphs as though

5  fully set forth herein.

6      69.      Pacific Steel has discharged and continues to discharge stormwater from the Facility

7  containing levels of pollutants that do not achieve compliance with the BAT/BCT requirements during

8  every significant rain event occurring from September 13, 2007 through the present. Pacific Steel's

9  failure to develop and/or implement BMPs that achieve the pollutant discharge reductions attainable

10  via BAT or BCT at the Facility is a violation of Effluent Limitation B(3) of the Industrial Stormwater

11  Permit and the CWA. *See* Industrial Stormwater Permit, Order Part B(3); 33 U.S.C. § 1311(b).

12      70.      Every day since at least September 13, 2007 that Pacific Steel has discharged

13  stormwater containing pollutants in violation of Effluent Limitation B (3), Pacific Steel has failed to

14  develop or implement BMPs that achieve pollutant discharge reductions attainable via BAT or BCT at

15  the Facility, in violation of the Industrial Stormwater Permit. Each day is a separate and distinct

16  violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

17      71.      Pacific Steel's CWA violations described in the paragraphs above will continue in the

18  future until Pacific Steel develops and implements BMPs at the Facility that achieve pollutant

19  discharge reductions attainable via BAT and BCT.

20      72.      By committing the acts and omissions alleged above, Pacific Steel is subject to an

21  assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)

22  and 1365.

23      73.      An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

24  1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm

25  Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at

26  law.

27      74.      An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an

28  actual controversy exists as to the rights and other legal relations of the Parties.

COMPLAINT                                                                                    Page 12

1    Wherefore, Plaintiff prays for judgment against Pacific Steel as set forth hereafter.

2

3

4                              **THIRD CLAIM FOR RELIEF**

5     **Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan,**

6                    **in Violation of the Industrial Stormwater Permit**

7                         **(Violations of 33 U.S.C. § 1311)**

8     75.    Plaintiff incorporates the allegations contained in all preceding paragraphs as though

9     fully set forth herein.

10    76.    Pacific Steel has failed and continues to fail to develop and implement an adequate

11    SWPPP or implement all necessary revisions to the SWPPP for the Facility as required by the

12    Industrial Stormwater Permit, Section A: Storm Water Pollution Prevention Plan (1), (2), and (9).

13    77.    Pacific Steel has failed and continues to fail to develop or implement a SWPPP for the

14    Facility that includes BMPs that meet the requirements of Section A: Storm Water Pollution

15    Prevention Plan Requirements of the Industrial Stormwater Permit.

16    78.    Pacific Steel has failed and continues to fail to develop or implement a SWPPP at the

17    Facility that prevents discharges from violating the Discharge Prohibitions, Effluent Limitations, and

18    Receiving Water Limitations of the Industrial Stormwater Permit.

19    79.    Each day since September 13, 2007 that Pacific Steel has failed to adequately develop

20    and/or implement a SWPPP for the Facility in violation of the Industrial Stormwater Permit is a

21    separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

22    80.    Pacific Steel has been in violation of the Industrial Stormwater Permit's SWPPP

23    requirements every day since September 13, 2007. Pacific Steel will continue to be in violation of the

24    SWPPP requirements each day that Pacific Steel fails to develop and fully implement an adequate

25    SWPPP for its Facility.

26    81.    By committing the acts and omissions alleged above, Pacific Steel is subject to an

27    assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and

28    1365.

COMPLAINT                                                                      Page 13

1    82.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

2    1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm

3    Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at

4    law.

5    83.    An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an

6    actual controversy exists as to the rights and other legal relations of the Parties.

7    Wherefore, Plaintiff prays for judgment against Pacific Steel as set forth hereafter.

8                                    **FOURTH CLAIM FOR RELIEF**

9    **Failure to Develop and Implement an Adequate Monitoring and Reporting Program,**

10                  **in Violation of the Industrial Stormwater Permit**

11                          **(Violations of 33 U.S.C. § 1311)**

12    84.    Plaintiff incorporates the allegations contained in all preceding paragraphs as though

13    fully set forth herein.

14    85.    Pacific Steel has failed and continues to fail to develop and implement an adequate

15    monitoring and reporting program ("MRP") and implement all necessary revisions to the MRP at the

16    Facility as required by the Industrial Stormwater Permit, Section B: Monitoring Program and

17    Reporting Requirements and Order Part E(3).

18    86.    Pacific Steel's MRP has failed and continues to fail to ensure that discharges from the

19    Facility are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water

20    Limitations as required in Sections B(2) and (10) of the Industrial Stormwater Permit.

21    87.    Pacific Steel has failed and continues to fail to effectively identify compliance

22    problems at the Facility or effectively revise the SWPPP to address such pollution problems as

23    required by Sections B(2-4) of the Industrial Stormwater Permit.

24    88.    Each day since September 13, 2007 that Pacific Steel has failed to develop and

25    implement an adequate MRP for the Facility in violation of the Permit is a separate and distinct

26    violation of CWA section 301(a), 33 U.S.C. § 1311(a).

27    89.    Pacific Steel has been in violation of the MRP requirements every day since September

28    13, 2007. Pacific Steel will continue to be in violation of the MRP requirements each day that Pacific

COMPLAINT                                                                                    Page 14

1     Steel fails to develop and fully implement an adequate MRP for the Facility.

2          90.     By committing the acts and omissions alleged above, Pacific Steel is subject to an

3   assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)

4   and 1365.

5          91.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

6   1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm

7   Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at

8   law.

9          92.     An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an

10   actual controversy exists as to the rights and other legal relations of the Parties.

11   Wherefore, Plaintiff prays for judgment against Pacific Steel as set forth hereafter.

12                               **FIFTH CLAIM FOR RELIEF**

13        **Unpermitted Discharge of Pollutants in Violation of CWA Section 301(a)**

14                     **(Violations of 33 U.S.C. § 1311)**

15          93.     Plaintiff incorporates the allegations contained in all preceding paragraphs as though

16   fully set forth herein.

17          94.     Pacific Steel has discharged and continues to discharge pollutants from the Facility in

18   violation of the Industrial Stormwater Permit. Thus, Pacific Steel's discharges are the unpermitted

19   discharge of pollutants from the Facility to waters of the United States without a permit, in violation of

20   CWA section 301(a), 33 U.S.C. § 1311(a).

21          95.     Pacific Steel has been in violation of CWA section 301(a) every day it has discharged

22   stormwater from the Facility to waters of the United States since September 13, 2007. Pacific Steel

23   will continue to be in violation of the CWA each day that it discharges stormwater from the Facility to

24   waters of the United States.

25          96.     By committing the acts and omissions alleged above, Pacific Steel is subject to an

26   assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)

27   and 1365.

28          97.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

COMPLAINT                                                            Page 15

1 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm
2 Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at
3 law.

4 98. An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an
5 actual controversy exists as to the rights and other legal relations of the Parties.
6 Wherefore, Plaintiff prays for judgment against Pacific Steel as set forth hereafter.

7 **RELIEF REQUESTED**

8 1. Baykeeper respectfully requests this Court to grant the following relief:

9     a. Declare Pacific Steel to have violated and to be in violation of sections 301(a)
10 and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from the
11 Facility in violation of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, for
12 failing to meet effluent limitations which include Best Available Technology Economically
13 Achievable ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements, and
14 for failing to comply with all substantive and procedural requirements of the following:

15     i. The State of California's General Permit No. CAS000001, Water
16 Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater
17 Permit");

18     ii. The San Francisco Bay Basin (Region 2) Water Quality Control Plan
19 (Basin Plan), as amended by Resolution No. R2-2010-0100 ("Basin Plan"); and

20     iii. The California Toxics Rule, 65 Fed. Reg. 31682 (May 18, 2000), 40
21 C.F.R. § 131.38 ("CTR");

22     b. Enjoin Pacific Steel from discharging pollutants from the Facility to storm
23 drains which discharge to San Francisco Bay;

24     c. Enjoin Pacific Steel to restore all receiving waters damaged by Defendant's
25 illegal discharges of pollutants from the Facility;

26     d. Enjoin Pacific Steel from violating sections 301(a) and (b) of the Clean Water
27 Act at the Facility;

28     e. Enjoin Pacific Steel from violating the substantive and procedural requirements

COMPLAINT Page 16

1  of the Industrial Stormwater Permit at the Facility;

2          f.      Enjoin Pacific Steel from violating the substantive and procedural requirements

3  of the Basin Plan at the Facility;

4          g.      Enjoin Pacific Steel from violating the substantive and procedural requirements

5  of the CTR at the Facility;

6          h.      Order Pacific Steel to pay civil penalties of up to $32,500 for all violations

7  between January 21, 2006 and through January 12, 2009, and $37,500 per day per violation for

8  violations occurring after January 12, 2009 in accordance with CWA Section 309(d), 33 U.S.C. §

9  1319(d) and 40 C.F.R. §§ 19.1-19.4 (2009).

10         i.      Award plaintiff its costs (including reasonable attorney, witness, and consultant

11  fees) as authorized by the CWA, 33 U.S.C. § 1365(d);

12         j.      Award such other relief as this Court may deem appropriate.

13

14  Dated: 11/20/12                              Respectfully Submitted,

15

16                                              By: Andrea 2. Kopecky

17                                              Andrea Kopecky
                                                Attorney for Plaintiff
18                                              BAYKEEPER

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                                              Page 17

# EXHIBIT 1



SAN FRANCISCO
**BAYKEEPER.**

September 13, 2012

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Joe Emmerichs, President
Pacific Steel Casting Company
1333 Second Street
Berkeley, CA 94710

Christina Chan, Environmental Engineer
Pacific Steel Casting Company
1333 Second Street
Berkeley, CA 94710

Michael S. Davidson
Agent for Service of Process
Vista IP Law Group
3470 Mt Diablo Blvd, Suite A300
Lafayette, CA 94549

   **Re: Notice of Violation and Intent to File Suit under the Clean Water Act**

Dear Sirs and Madam:

   I am writing on behalf of San Francisco Baykeeper ("Baykeeper") to give notice that Baykeeper intends to file a civil action against Pacific Steel Casting Company. ("You" or "Your" or "Pacific Steel") for Your violations of the Clean Water Act ("CWA") at Pacific Steel's steel foundry facility located at 1333 Second Street in Berkeley, California (the "Facility").

   This letter addresses Pacific Steel's unlawful discharge of pollutants from its industrial facility into San Francisco Bay and the ongoing and continuous violations of the substantive and procedural requirements of the Clean Water Act and National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit").

   CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of his or her intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the State in which the violations occur.



Pollution hotline: 1 800 KEEP BAY
www.baykeeper.org

785 Market Street, Suite 850
San Francisco, CA 94103
Tel (415) 856-0444
Fax (415) 856-0443

As required by the CWA, this Notice of Violation and Intent to File Suit provides notice of the violations that have occurred and which continue to occur at Pacific Steel's Facility. Baykeeper's investigations have uncovered significant violations of the Industrial Stormwater Permit at Your Facility. Consequently, You are hereby placed on formal notice from Baykeeper that, after the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, Baykeeper intends to file suit in federal court against Pacific Steel under CWA section 505(a), 33 U.S.C. §1365(a), for CWA violations. These violations of the Order and the CWA are described more fully below.

During the 60-day notice period, we would like to discuss effective remedies for the violations identified in this letter. If You wish to pursue such discussions, we suggest that You initiate those discussions within the next twenty (20) days so that they may be completed at the conclusion of the 60-day notice period. Please note that we do not intend to delay the filing of a complaint in federal court even if discussions are continuing when that period ends.

## I.    BACKGROUND

Baykeeper is a non-profit public benefit corporation organized under the laws of California, with its main office in San Francisco, California. Baykeeper's purpose is to preserve, protect, and defend the environment, wildlife, and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area, for the benefit of local communities. To further its goals, Baykeeper actively seeks federal and state agency implementation of state and federal water quality related laws, and as necessary, directly initiates enforcement actions on behalf of itself and its members. Baykeeper has over two thousand members who use and enjoy the San Francisco Bay and other waters for various recreational, educational, and spiritual purposes. Baykeeper's members' use and enjoyment of these waters are impacted by Pacific Steel's operations.

In most of the San Francisco Bay area, stormwater flows untreated either directly, or through the storm drain system, into San Francisco Bay and other receiving waters. The consensus among agencies and water quality specialists is that stormwater pollution accounts for more than half of the total pollution entering the Bay environment each year. With every rainfall event, hundreds of millions of gallons of polluted rainwater, originating from area industries, pour into the Bay and its tributaries. These contaminated stormwater discharges can and must be controlled for the Bay ecosystem to regain its health.

Discharges of stormwater and non-stormwater from steel foundries are of significant concern because the industrial activities associated with these sites make various pollutants particularly accessible to stormwater. Specifically, facilities such as Pacific Steel's are engaged in the manufacturing and processing of metal and steel components which contain heavy metals and other pollutants that can come into contact with stormwater.

## II.    THE LOCATION OF THE ALLEGED VIOLATIONS

The violations alleged in this notice letter have occurred and continue to occur at Pacific Steel's Facility, located at 1333 Second Street, Berkeley, CA 94710. Contaminated stormwater discharges from the Facility into nearby storm drains which drain to San Francisco Bay. Violations of the substantive and procedural requirements of the General Industrial Permit and the Clean Water Act have occurred and continue to occur at the Facility.

## A. The Facility

Pacific Steel Casting Company operates the Facility, which is located in Berkeley near San Francisco Bay. Pacific Steel was founded in 1934 and began by making steel castings for the U.S. Military. Today, Pacific Steel is the fourth largest steel foundry in the United States. Pacific Steel processes and manufactures materials containing heavy metals. Stormwater from the Facility flows into nearby streets and storm drains, which discharge directly to San Francisco Bay.

## B. The Affected Waters

Stormwater from the Facility reaches San Francisco Bay via storm drains in Berkeley. San Francisco Bay is a water of the United States. The CWA requires that water bodies such as San Francisco Bay meet water quality objectives which protect specific "beneficial uses." The beneficial uses of the San Francisco Bay and its tributaries include commercial and sport fishing, estuarine habitat, fish migration, navigation, preservation of rare and endangered species, water contact and non-contact recreation, shellfish harvesting, fish spawning, and wildlife habitat.

The San Francisco Bay Basin (Region 2) Water Quality Control Plan ("Basin Plan") seeks to protect and maintain aquatic ecosystems and the resources those systems provide to society through water quality objectives and standards.[1] The Basin Plan acknowledges discharges of urban industrial site stormwater as a significant source of pollution adversely affecting the quality of local waters. Contaminated stormwater from Pacific Steel's Facility adversely impacts the water quality of San Francisco Bay watershed and threaten the ecosystem of this watershed, which includes significant habitat for listed rare and endangered species.

San Francisco Bay and its shoreline, tributaries, and adjacent wetlands are ecologically sensitive areas. Although pollution and habitat destruction have drastically diminished the Bay's once-abundant and varied fisheries, the Bay and its wetlands and

---

[1] The Basin Plan is published by EPA at:

http://water.epa.gov/scitech/swguidance/standards/wqslibrary/upload/2009_03_16_standards_wqslibrary_c a_ca_9_san_francisco.pdf. (Last accessed on 9/13/12).

The Basin Plan is also published by the Regional Board at:

http://www.waterboards.ca.gov/sanfranciscobay/basin_planning.shtml#2004basinplan. (Last accessed on 9/13/12).

tributaries are still essential habitat for dozens of fish and bird species as well as macro-invertebrate and invertebrate species. Stormwater contaminated with sediment, heavy metals, and other pollutants harms the special aesthetic and recreational significance that the San Francisco Bay has for people in the surrounding communities. San Francisco Bay is used by kayakers and windsurfers, as well as recreational and subsistence anglers. The public's usage of the San Francisco Bay for water contact sports exposes many people to toxic metals and other contaminants in stormwater runoff. Non-contact recreational and aesthetic opportunities, such as wildlife observation, also are damaged by stormwater contaminants discharged to San Francisco Bay.

It is unlawful to discharge pollutants to waters of the United States, such as San Francisco Bay, without an NPDES permit or in violation of the terms and conditions of an NPDES permit. You have submitted an NOI to be authorized to discharge stormwater from the Facility under the Industrial Stormwater Permit. Other than Your discharges covered under the Industrial Stormwater Permit, Your Facility lacks NPDES permit authorization for any other discharges of pollutants into waters of the United States.

Based on information available to Baykeeper, You have violated and are in violation of the Industrial Stormwater Permit and the Clean Water Act. Consequently, You are hereby placed on formal notice from Baykeeper that, after the expiration of sixty (60) days from the date of this Notice of Violation and Intent To File Suit, Baykeeper intends to file suit in federal court against You under CWA section 505(a), 33 U.S.C. § 1365(a), for Your violations of the CWA.

## III. THE ACTIVITIES AT THE FACILITIES ALLEGED TO CONSTITUTE VIOLATIONS AND THE EFFLUENT LIMITATIONS VIOLATED

Pacific Steel engages in the design, engineering, and manufacture of steel castings, which are commonly used in the following industries: oil and gas, mining, construction, trucking, alternative energy, and military. Potential pollutants from steel foundries include oil and grease, sediment, and heavy metals, such as aluminum, iron, lead, and zinc. Some of Pacific Steel's operations occur outdoors and are exposed to rainfall. Stormwater flows from the Facility into nearby storm drains, which drain to San Francisco Bay.

As a result of the pollutant-generating activities at Pacific Steel's Facility, contaminated stormwater runs off the Facility and discharges into nearby storm drains which discharge to San Francisco Bay. Information available to Baykeeper indicates that You have failed to comply with all requirements of the Industrial Stormwater Permit. As further described below, these actions all constitute violations of CWA.

### A. Discharges in Violation of the Industrial Stormwater Permit

The CWA provides that "the discharge of any pollutant by any person shall be unlawful" unless the discharger is in compliance with the terms of a NPDES permit. CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p)

(requiring NPDES permit issuance for the discharge of stormwater associated with industrial activities). Pacific Steel's Facility discharges stormwater associated with industrial activity to San Francisco Bay and its tributaries. The Industrial Stormwater Permit authorizes Your discharges of stormwater, conditioned on Your compliance with the terms of the General Permit. Information available to Baykeeper indicates that Your stormwater discharges from the Facility have violated several of these permit terms, thereby violating the CWA. *Id.*

## 1. Discharges in Excess of BAT/BCT Levels

The Effluent Limitations of the Industrial Stormwater Permit prohibit the discharge of pollutants from Pacific Steel's Facility in concentrations above the level commensurate with the application of best available technology economically achievable ("BAT") for toxic pollutants[2] and best conventional pollutant control technology ("BCT") for conventional pollutants.[3] Industrial Stormwater Permit, Order Part B(3). EPA and the Santa Ana Regional Board have published Benchmark Values set at the maximum pollutant concentration present if an industrial facility is employing BAT and BCT.[4] Based on Your self-reported stormwater sampling data, discharges of stormwater from Your Facility contain pollutant levels in excess of Benchmark Values, an objective measure for determining whether Your discharges are in compliance with BAT and BCT requirements for discharges of stormwater associated with industrial activity. In addition, Baykeeper has collected stormwater discharging from Your Facility, and the samples were analyzed for various metals. Stormwater samples from the Facility exceeded EPA Benchmarks. Available information indicates that You have failed and are failing to employ measures that constitute BAT and BCT for steel foundries in violation of the requirements of the Industrial Stormwater Permit. Such BAT and BCT measures could include, but are not limited to, moving certain polluting generating activities under cover or indoors, capturing and effectively filtering or otherwise treating all stormwater prior to discharge, installing air filters to prevent pollutants from being released onto the roof and adjacent property, frequent sweeping to reduce the build-up of pollutants on-site, and other similar measures for reducing stormwater pollutant discharges to the limits of available, economically achievable technology.

Specific examples of instances when Your self-reported stormwater discharges exceeded EPA Benchmarks can be found in Attachment 2. In addition to the samples in Attachment 2, Baykeeper's own stormwater samples collected at the Facility exceeded EPA Benchmarks for copper and zinc. These ongoing exceedances over the past five years also indicate that each time You discharge stormwater, You are not meeting BAT and BCT requirements. Baykeeper alleges and puts You on notice that each day that You

---

[2] BAT is defined at 40 C.F.R. § 442.23. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.

[3] BCT is defined at 40 C.F.R. § 442.22. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, oil and grease, pH, and fecal coliform.

[4] These Benchmark Values are presented in Attachment 1 and can be found at:
http://www.epa.gov/npdes/pubs/msgp2008_finalpermit.pdf and http://cwea.org/p3s/documents/multi-sectorrev.pdf (Last accessed on 9/13/12).

have discharged stormwater from the Facility, Your stormwater contained levels of
pollutants which may be exceeding Benchmark Values for aluminum, copper, iron, pH,
total suspended solids ("TSS") and/or zinc, among other pollutants. Baykeeper alleges
that You have discharged stormwater containing excessive levels of pollutants from the
Facility to San Francisco Bay during at least every significant local rain event over 0.1
inches in the last five years.[5] Attachment 3 compiles all dates in the last five (5) years
when a significant rain event occurred.

Baykeeper alleges that Your unlawful discharges of stormwater from the Facility
with levels of pollutants exceeding BAT and BCT levels of control have occurred and
continue to occur during all significant rain events. Further, Pacific Steel's ongoing
discharge of stormwater containing levels of pollutants above EPA Benchmark values
and BAT- and BCT-based levels of control necessarily means that You have not
developed and/or implemented sufficient BMPs at Your Facility to prevent stormwater
flows from coming into contact with the sources of contaminants at the Facility or
otherwise to control the discharge of pollutants from the Facility. You have not
developed and/or implemented adequate pollution controls to meet BAT and BCT at the
Facility, and You have violated and will continue to violate the Clean Water Act and the
Industrial Stormwater Permit each and every day You discharge stormwater without
meeting BAT/BCT. Each discharge of stormwater from Your Facility constitutes a
separate violation of the Industrial Stormwater Permit and the CWA. These violations
occurred on the dates in Attachment 2, as well as each day in Attachment 3 in which
rainfall was greater than 0.1 inches. You are subject to civil penalties for violations of
the Industrial Stormwater Permit and the CWA within the past five (5) years.

## 2. Discharges Impairing Receiving Waters

The Industrial Stormwater Permit's Discharge Prohibitions prohibit stormwater
discharges that cause or threaten to cause pollution, contamination, or nuisance. *See*
Industrial Stormwater Permit, Order Part A(2). The Industrial Stormwater Permit also
prohibits stormwater discharges to surface or groundwater that adversely impact human
health or the environment. *Id.* at Order Part C(1). Receiving Water Limitations of the
Industrial Stormwater Permit prohibit stormwater discharges that cause or contribute to
an exceedance of applicable Water Quality Standards ("WQS"). *Id.* at Order Part C(2).
Applicable WQSs are set forth in the California Toxics Rule ("CTR")[6] and the Basin Plan
and found in Attachment 4. Exceedances of WQSs are violations of the Industrial
Stormwater Permit, the CTR, and the Basin Plan.

The Basin Plan, *inter alia*, establishes the following Water Quality Standards for
San Francisco Bay and its tributaries:

---

[5] Significant local rain events are reflected in the rain gauge data available at http://cdec.water.ca.gov and
http://lwf.ncdc.noaa.gov/oa/ncdc.html. (Last accessed on 9/13/12).
[6] The CTR is set forth at 40 C.F.R. § 131.38 and is explained in the Federal Register preamble
accompanying the CTR promulgation set forth at 65 Fed. Reg. 31682.

Case3:12-cv-05955-JCS Document1 Filed11/20/12 Page26 of 38

- Waters shall not contain substances in concentrations that result in the
  deposition of material that cause nuisance or adversely affect beneficial uses.

- Waters shall not contain suspended material in concentrations that cause
  nuisance or adversely affect beneficial uses.

- Waters shall be free of changes in turbidity that cause nuisance or adversely
  affect beneficial uses. Increases from normal background light penetration
  or turbidity relatable to waste discharge shall not be greater than 10 percent
  in areas where natural turbidity is greater than 50 NTU.

- All waters shall be maintained free of toxic substances in concentrations that
  are lethal to or that produce other detrimental responses in aquatic
  organisms. Detrimental responses include, but are not limited to, decreased
  growth rate and decreased reproductive success of resident or indicator
  species. There shall be no acute toxicity in ambient waters. Acute toxicity
  is defined as a median of less than 90 percent survival, or less than 70
  percent survival, 10 percent of the time, of test organisms in a 96-hour static
  or continuous flow test. There shall be no chronic toxicity in ambient
  waters. Chronic toxicity is a detrimental biological effect on growth rate,
  reproduction, fertilization success, larval development, population
  abundance, community composition, or any other relevant measure of the
  health of an organism, population, or community.

- Surface waters shall not contain concentrations of chemical constituents in
  amounts that adversely affect any designated beneficial use. See the Basin
  Plan's Table 3-3 for specific marine water quality objectives for toxic
  pollutants.[7]

Baykeeper alleges that Pacific Steel's stormwater discharges have caused or
contributed to exceedances of the Water Quality Standards set forth in the Basin Plan and
California Toxics Rule. Attachment 2 to this Notice Letter compiles the self-monitoring
data reported by Pacific Steel pursuant to the Industrial Stormwater Permit to the
Regional Board, reflecting Pacific Steel's sampling of actual stormwater discharges.
Based on information available to Baykeeper, the sample results reflected in Attachment
2 are representative of the pollutant levels in the Facility's discharges of stormwater.
Thus, every instance when the Facility has discharged stormwater, including instances
when the Facility has discharged stormwater that Pacific Steel has not sampled, these
stormwater discharges contained levels of pollutants comparable to the levels set forth in
Attachment 2. Thus, You are exceeding Benchmarks on all days when stormwater is

[7] Basin Plan, Table 3-3 is available at:
http://www.waterboards.ca.gov/sanfranciscobay/water_issues/programs/planningtmdls/basinplan/web/tab/t
ab_3-03.pdf. (Last accessed on 9/13/12).

discharging from Your Facility, in addition to those days when You have sampled stormwater.

Attachment 2 indicates that You routinely discharge stormwater to San Francisco Bay containing the following pollutants: aluminum, copper, iron, pH, TSS, and zinc. The levels of these pollutants in Your stormwater discharges have caused pollution, contamination, or nuisance in violation of the Discharge Prohibitions of the Industrial Stormwater Permit, and have adversely impacted the environment in violation of the Receiving Water Limitations of the Industrial Stormwater Permit. *See* Industrial Stormwater Permit, Order Parts A(2) and C(2). Moreover, the discharge of these pollutants has caused or contributed to San Francisco Bay's failure to attain one or more applicable Water Quality Standards in violation of the Receiving Water Limitations. *Id.* at Order Part C(2).

Baykeeper alleges that each day that Pacific Steel discharged stormwater from the Facility, Your stormwater contained levels of pollutants that exceeded one or more of the applicable Water Quality Standards in San Francisco Bay. Pacific Steel discharged stormwater from the Facility during at least every significant local rain event over 0.1 inches that have caused or contributed to Water Quality Standards not being met in San Francisco Bay in the last five years. Significant local rain events in the last five (5) years are compiled in Attachment 3 and otherwise available at http://cdec.water.ca.gov and http://lwf.ncdc.noaa.gov/oa/ncdc.html (Last accessed on 9/13/12).

Pacific Steel's unlawful discharges from the Facility have occurred and continue to occur presently during all significant rain events. Each and every day that stormwater discharges from Your Facility is a violation of the Industrial Stormwater Permit and the CWA because You are failing to meet BAT and BCT. In addition, each discharge from Your Facility that has caused or contributed, or causes or contributes to an exceedance of an applicable Water Quality Standard constitutes a separate violation of the Industrial Stormwater Permit and the CWA. You are subject to penalties for violations of the Industrial Stormwater Permit and the CWA within the past five (5) years.

### 3. Failure to Develop and/or Implement an Adequate Storm Water Pollution Prevention Plan ("SWPPP"), as Required by the Industrial Stormwater Permit.

The Industrial Stormwater Permit requires dischargers covered by the Industrial Stormwater Permit and commencing industrial activities before October 1, 1992 to develop and implement an adequate SWPPP by October 1, 1992. Industrial Stormwater Permit, Section A: Storm Water Pollution Prevention Plan Requirements, (1)(a). The Industrial Stormwater Permit also requires dischargers to make all necessary revisions to existing SWPPPs promptly, and in any case no later than August 1, 1997. *Id.* at Order Part E(2).

The SWPPP must include, among other requirements, the following: (a) identification of all the members of a stormwater pollution prevention team responsible

for developing and implementing the SWPPP (*Id.* at Section A(3)); (b) a site map showing the stormwater conveyance system and areas of actual and potential pollutant contact and all areas of on-going industrial activity (*Id.* at Section A(4)); (c) a list of significant materials handled and stored at the site including quantities and frequencies (*Id.* at Section A(5)); (d) a description of all potential pollutant sources, industrial processes, material handling and storage, dust and particulate generating activities, significant spills and leaks, non-stormwater discharges, and potential soil erosion activity (*Id.* at Section A(6)); (e) an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in stormwater discharges and authorized non-stormwater discharges, including structural BMPs where non-structural BMPs are not effective (*Id.* at Sections A(7-8)); (f) specification of BMPs designed to reduce pollutant discharge to BAT and BCT levels, including BMPs already existing and BMPs to be adopted or implemented in the future (*Id.* at Section A(8)); (g) a comprehensive site compliance evaluation completed each reporting year, and revisions to the SWPPP as necessary after the evaluation has been completed (*Id.* at Section A(9)); and (h) revisions to the SWPPP within 90 days after a facility manager determines that the SWPPP is in violation of any requirements of the Industrial Stormwater Permit (*Id.* at Section A(10)). Facility operators are required to at all times properly operate and maintain any facilities and systems of treatment and control (and related appurtenances) which have been installed or used to achieve compliance with the conditions of the Industrial Stormwater Permit and the requirements of the SWPPP. *Id.* at Order Part C(5).

Pacific Steel's SWPPP does not include, and Pacific Steel has not implemented, adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels in accordance with Section A(8) of the Industrial Stormwater Permit, as evidenced by the Facility's discharges of stormwater contaminated with pollutants at levels attainable via application of BAT and BCT. Pacific Steel's failure to prepare and/or implement an adequate SWPPP and/or to revise the SWPPP in all the above respects constitutes a violation of the Industrial Stormwater Permit, Section A(8) (SWPPP must specify BMPs necessary to attain BAT and BCT levels that are tailored to site conditions).

Accordingly, You have violated the Clean Water Act each and every day You have failed to develop and/or implement an adequate SWPPP meeting all of the requirements of Section A of the Industrial Stormwater Permit, and You will continue to be in violation every day that You fail to develop and/or implement an adequate SWPPP. You are subject to penalties for violations of the Industrial Stormwater Permit and the CWA occurring within the past five (5) years.

### 4. Failure to Develop and Implement an Adequate Monitoring and Reporting Programs and Perform Annual Comprehensive Site Compliance Evaluations as Required by the Industrial Stormwater Permit.

The Industrial Stormwater Permit requires facility operators to develop and to implement a Monitoring and Reporting Program ("MRP") by October 1, 1992 or when

industrial activities begin at a facility. Industrial Stormwater Permit, Section B: Monitoring Program and Reporting Requirements, (1) and Order Part E(3). The Industrial Stormwater Permit requires that the MRP ensure that each facility's stormwater discharges comply with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit. *Id.* at Section B(2). Facility operators must ensure that their MRP practices reduce or prevent pollutants in stormwater and authorized non-stormwater discharges as well as evaluate and revise their practices to meet changing conditions at the facility. *Id.* This may include revising the SWPPP as required by Section A of the Industrial Stormwater Permit. The MRP must measure the effectiveness of BMPs used to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges, and facility operators must revise the MRP whenever appropriate. *Id.* Facility operators are also required to provide an explanation of monitoring methods describing how the facility's monitoring program will satisfy these objectives. *Id.* at Section B(10).

Pursuant to the monitoring and reporting requirements of the Industrial Stormwater Permit, facility operators must conduct and record visual observations of all drainage locations at the facility for authorized non-stormwater, unauthorized non-stormwater, and stormwater discharges throughout the year. *Id.* at Sections B(3), (4), and (8). Facility operators must also implement responsive measures to eliminate unauthorized non-stormwater discharges, to reduce or prevent pollutants from contacting non-stormwater discharges, and to reduce or prevent pollutants in stormwater discharges. *Id.* at Sections B(3), (4), and (7).

In addition to conducting visual observations, facility operators are required to collect and sample stormwater samples during the first hour of discharge from the first storm event of the wet season and at least one other storm event in the wet season. *Id.* at Section B(5)(a). Facility operators that do not collect samples from the first storm event of the wet season are required to explain in the Annual Report why the first storm event was not sampled. *Id.* If either sample collection or monthly visual observations of stormwater discharges occur more than one hour after discharge begins, facility operators must explain in the Annual Report why the sampling occurred more than one hour after discharges began. *Id.* at Section B(8)(b).

To achieve the objectives of the monitoring program, facility operators must comply with certain procedural requirements, including explaining monitoring methods; providing a description of the visual observation and sampling methods, location, and frequency; and identifying the analytical methods and corresponding method of detection limits used to detect pollutants in stormwater discharges. *Id.* at Section B(10). Facility operators must submit an Annual Report by July 1 each year to the Regional Water Board that includes a summary of visual observations and sampling results, laboratory reports, the Annual Comprehensive Site Compliance Evaluation Report, an explanation of why a facility did not implement any required activities, and records specified in Sections B(13)-(14).

Pacific Steel has been operating the Facility with an inadequately developed and/or inadequately implemented MRP, in violation of the substantive and procedural requirements set forth above. Your monitoring program has not ensured that stormwater discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit as required by Section B(2). The monitoring programs have not resulted in practices at the Facility that adequately reduce or prevent pollutants in stormwater as required by Order Part B(2). Pacific Steel's MRP has not effectively identified or responded to compliance problems at the Facility or resulted in effective revision of BMPs in use or the Facility's SWPPP to address such ongoing problems as required by Section B(2) of the Industrial Stormwater Permit.

As a result of Your failure to adequately develop and/or implement an adequate MRP at the Facility, You have been in daily and continuous violation of the Industrial Stormwater Permit and the CWA on each and every day for the last five years. These violations are ongoing. You will continue to be in violation of the monitoring and reporting requirements every day You fail to adequately develop and/or implement an effective MRP at the Facility. You are subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring for the last five (5) years.

## 5. Discharges Without Permit Coverage.

Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is authorized by a NPDES permit issued pursuant to section 402 of the Clean Water Act. *See* 33 U.S.C. §§ 1311(a), 1342. In turn, You have sought coverage under the Industrial Stormwater Permit, which states that any discharge from an industrial facility not in compliance with the Industrial Stormwater Permit "must be either eliminated or permitted by a separate NPDES permit." Industrial Stormwater Permit, Order Part A(1). Because You have not obtained coverage under any separate NPDES permit, and have not eliminated discharges not permitted by the Industrial Stormwater Permit, each and every discharge from Your Facility described herein not in compliance with the Industrial Stormwater Permit has constituted and will continue to constitute a discharge without CWA permit coverage in violation of section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

## IV. PERSONS RESPONSIBLE FOR THE VIOLATIONS

Pacific Steel Casting Company is the person responsible for the violations at the Facility described above.

## V. NAME AND ADDRESS OF NOTICING PARTY

Our name, address, and telephone number is as follows:

San Francisco Baykeeper

Notice of Intent to File Suit
September 13, 2012
Page 12 of 13

785 Market Street, Suite 850
San Francisco, CA 94103
(415) 856-0444

## VI.    COUNSEL

Baykeeper is represented by the following counsel in this matter, to whom all communications should be directed:

Amanda Garcia
Andrea Kopecky
San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA 94103
(415) 856-0444

Amanda Garcia: (415) 856-0444 x105, amanda@baykeeper.org
Andrea Kopecky: (415) 856-0444 x110, andrea@baykeeper.org

## VII.   REMEDIES

Baykeeper will seek declaratory and injunctive relief preventing further CWA violations pursuant to CWA sections 505(a) and (d), 33 U.S.C. §1365(a) and such other relief as permitted by law. In addition, Baykeeper will seek civil penalties pursuant to CWA section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. section 19.4, against You in this action. The CWA imposes civil penalty liability of up to $32,500 per day per CWA violation for violations occurring from March 15, 2004 through January 12, 2009, and $37,500 per day per violation for violations occurring after January 12, 2009. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (2009). Baykeeper will seek to recover attorneys' fees, experts' fees, and costs in accordance with CWA section 505(d), 33 U.S.C. § 1365(d).

Baykeeper intends, at the close of the 60-day notice period or thereafter, to file a citizen suit under CWA section 505(a) against You for the above-referenced violations. During the 60-day notice period, we are willing to discuss effective remedies for the violations noted in this letter. We suggest that You contact us within the next twenty (20) days so that these discussions may be completed by the conclusion of the 60-day notice period. Please note that we do not intend to delay the filing of a complaint in federal court even if discussions are continuing when the notice period ends.

Sincerely,

Andrea L. Kopecky

Andrea Kopecky
Associate Attorney
San Francisco Baykeeper

Notice of Intent to File Suit
September 13, 2012
Page 13 of 13

Cc:

| Lisa Jackson<br>Administrator<br>US EPA, Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Mail Code: 1101A<br>Washington, D.C. 20460 | Eric H. Holder, Jr.<br>U.S. Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001 |
|---|---|
| Jared Blumenfeld<br>Regional Administrator<br>U.S. EPA - Region 9<br>75 Hawthorne Street<br>San Francisco, California 94105 | Thomas Howard<br>Executive Director<br>State Water Resources Control Board<br>1001 I Street<br>Sacramento, CA 95814 |
| Bruce Wolfe<br>Executive Officer<br>Regional Water Quality Control Board<br>San Francisco Bay Region<br>1515 Clay Street, Suite 1400<br>Oakland, CA 94612 | |

## Attachment 1: EPA Benchmarks

| Parameter | Units | Benchmark value |
|---|---|---|
| Biochemical Oxygen Demand | mg/L | 30 |
| Chemical Oxygen Demand (COD) | mg/L | 120 |
| Total Suspended Solids (TSS) | mg/L | 100 |
| Oil and Grease | mg/L | 15 |
| Nitrate + Nitrite Nitrogen | mg/L | 0.68 |
| Total Phosphorus | mg/L | 2 |
| pH | SU - low | 6 |
| pH | SU - high | 9 |
| Acrylonitrile | mg/L | 7.55 |
| Aluminum Total | mg/L | 0.75 |
| Ammonia Total (as N) | mg/L | 19 |
| Antimony, Total | mg/L | 0.64 |
| Arsenic Total | mg/L | 0.15 |
| Benzene | mg/L | 0.01 |
| Beryllium, Total | mg/L | 0.13 |
| Butylbenzyl Phthalate | mg/L | 3 |
| Chloride | mg/L | 860 |
| Copper Total | mg/L | 0.0636 |
| Dimethyl Phthalate | mg/L | 1 |
| Ethylbenzene | mg/L | 3.1 |
| Fluoranthene | mg/L | 0.042 |
| Fluoride | mg/L | 1.8 |
| Iron Total | mg/L | 1 |
| Lead Total | mg/L | 0.0816 |
| Manganese | mg/L | 1 |
| Mercury Total | mg/L | 0.0024 |
| Nickel Total | mg/L | 1.417 |
| PCB-1016 | mg/L | 0.000127 |
| PCB-1221 | mg/L | 0.1 |
| PCB-1232 | mg/L | 0.000318 |
| PCB-1242 | mg/L | 0.0002 |
| PCB-1248 | mg/L | 0.002544 |
| PCB-1254 | mg/L | 0.1 |
| PCB-1260 | mg/L | 0.000477 |
| Phenols, Total | mg/L | 1 |
| Pyrene | mg/L | 0.01 |
| Selenium Total | mg/L | 0.2385 |
| Silver Total | mg/L | 0.0318 |
| Toluene | mg/L | 10 |
| Trichloroethylene | mg/L | 0.0027 |
| Zinc Total | mg/L | 0.117 |
| Cyanide Total (as CN) | mg/L | 0.0636 |
| Magnesium Total | mg/L | 0.064 |
| Electrical Conductivity @ 25 Deg. C | umhos/cm | 200 |

## Attachment 2: Table of Violations for Pacific Steel Casting Co.

Table containing each stormwater sample result provided by Pacific Steel in which samples exceed Water Quality Standards (yellow), or EPA Benchmarks (green), or both (green). Samples listed are only from the last 5 years. The EPA Benchmarks and Water Quality Standards are listed at the end of the table.

| No. | Location | Date | Parameter | | Value | Units | Wet Season |
|-----|----------|------|-----------|---|-------|-------|------------|
| 1 | D1 | 3/1/2012 | Copper Total | = | 0.012 | mg/L | 2011 - 2012 |
| 2 | D1 | 3/1/2012 | Zinc Total | = | 6.5 | mg/L | 2011 - 2012 |
| 3 | D2 | 3/1/2012 | Copper Total | = | 0.014 | mg/L | 2011 - 2012 |
| 4 | D2 | 3/1/2012 | Zinc Total | = | 0.64 | mg/L | 2011 - 2012 |
| 5 | D3 | 3/1/2012 | Total Suspended Solids (TSS) | = | 150 | mg/L | 2011 - 2012 |
| 6 | D3 | 3/1/2012 | Aluminum Total | = | 7.6 | mg/L | 2011 - 2012 |
| 7 | D3 | 3/1/2012 | Copper Total | = | 0.035 | mg/L | 2011 - 2012 |
| 8 | D3 | 3/1/2012 | Iron Total | = | 7.7 | mg/L | 2011 - 2012 |
| 9 | D3 | 3/1/2012 | Zinc Total | = | 1 | mg/L | 2011 - 2012 |
| 10 | D12 | 3/1/2012 | Total Suspended Solids (TSS) | = | 230 | mg/L | 2011 - 2012 |
| 11 | D12 | 3/1/2012 | Aluminum Total | = | 9.6 | mg/L | 2011 - 2012 |
| 12 | D12 | 3/1/2012 | Copper Total | = | 0.088 | mg/L | 2011 - 2012 |
| 13 | D12 | 3/1/2012 | Iron Total | = | 17 | mg/L | 2011 - 2012 |
| 14 | D12 | 3/1/2012 | Zinc Total | = | 0.78 | mg/L | 2011 - 2012 |
| 15 | D13 | 3/1/2012 | pH | = | 5.92 | SU | 2011 - 2012 |
| 16 | D13 | 3/1/2012 | Aluminum Total | = | 0.79 | mg/L | 2011 - 2012 |
| 17 | D13 | 3/1/2012 | Copper Total | = | 0.01 | mg/L | 2011 - 2012 |
| 18 | D13 | 3/1/2012 | Iron Total | = | 1.2 | mg/L | 2011 - 2012 |
| 19 | D13 | 3/1/2012 | Zinc Total | = | 0.51 | mg/L | 2011 - 2012 |
| 20 | D15 | 3/1/2012 | Aluminum Total | = | 5.2 | mg/L | 2011 - 2012 |
| 21 | D15 | 3/1/2012 | Copper Total | = | 0.048 | mg/L | 2011 - 2012 |
| 22 | D15 | 3/1/2012 | Iron Total | = | 18 | mg/L | 2011 - 2012 |
| 23 | D15 | 3/1/2012 | Zinc Total | = | 0.53 | mg/L | 2011 - 2012 |
| 24 | D10 | 3/1/2012 | Total Suspended Solids (TSS) | = | 230 | mg/L | 2011 - 2012 |
| 25 | D10 | 3/1/2012 | Aluminum Total | = | 6.1 | mg/L | 2011 - 2012 |
| 26 | D10 | 3/1/2012 | Copper Total | = | 0.071 | mg/L | 2011 - 2012 |
| 27 | D10 | 3/1/2012 | Iron Total | = | 16 | mg/L | 2011 - 2012 |
| 28 | D10 | 3/1/2012 | Zinc Total | = | 1.5 | mg/L | 2011 - 2012 |
| 29 | D2 | 11/20/2009 | Copper Total | = | 0.029 | mg/L | 2009 - 2010 |
| 30 | D2 | 11/20/2009 | Zinc Total | = | 0.49 | mg/L | 2009 - 2010 |
| 31 | D2 | 11/20/2009 | Iron Total | = | 3.6 | mg/L | 2009 - 2010 |
| 32 | D2 | 11/20/2009 | Aluminum Total | = | 0.95 | mg/L | 2009 - 2010 |
| 33 | D13 | 11/20/2009 | Copper Total | = | 0.013 | mg/L | 2009 - 2010 |
| 34 | D13 | 11/20/2009 | Zinc Total | = | 0.26 | mg/L | 2009 - 2010 |
| 35 | D13 | 11/20/2009 | Iron Total | = | 2.1 | mg/L | 2009 - 2010 |
| 36 | D13 | 11/20/2009 | Aluminum Total | = | 1 | mg/L | 2009 - 2010 |
| 37 | D1 | 11/20/2009 | Zinc Total | = | 2.4 | mg/L | 2009 - 2010 |
| 38 | D10 | 11/20/2009 | Copper Total | = | 0.025 | mg/L | 2009 - 2010 |

| 39 | D10 | 11/20/2009 | Zinc Total | = | 0.89 | mg/L | 2009 - 2010 |
| 40 | D10 | 11/20/2009 | Iron Total | = | 1.5 | mg/L | 2009 - 2010 |
| 41 | D1 | 11/20/2009 | Copper Total | = | 0.059 | mg/L | 2009 - 2010 |
| 42 | D1 | 11/20/2009 | Zinc Total | = | 0.91 | mg/L | 2009 - 2010 |
| 43 | D1 | 11/20/2009 | Iron Total | = | 5.8 | mg/L | 2009 - 2010 |
| 44 | D1 | 11/20/2009 | Aluminum Total | = | 1.7 | mg/L | 2009 - 2010 |

**EPA benchmarks (MSGP)**

| Total Suspended Solids (TSS) | 100 | mg/L |
|---|---|---|
| Oil and Grease | 15 | mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 | mg/L |
| Arsenic Total | 0.16854 | mg/L |
| Benzene | 0.01 | mg/L |
| Copper Total | 0.0636 | mg/L |
| Toluene | 10 | mg/L |
| Mercury Total | 0.0024 | mg/L |
| Nickel Total | 1.417 | mg/L |
| Cadmium Total | 0.0159 | mg/L |
| Zinc Total | 0.117 | mg/L |
| Magnesium Total | 0.0636 | mg/L |

**Criteria – Basin Plan**

| Chromium VI | 1.1 | mg/L |
|---|---|---|
| Copper Total | 0.0048 | mg/L |
| Cyanide Total (as CN) | 0.001 | mg/L |
| Zinc Total | 0.09 | mg/L |
| PAHs | 0.015 | mg/L |
| Nickel Total | 0.074 | mg/L |

## Attachment 3: Alleged Dates of Pacific Steel Casting Co. Violations, September 2007 to April 2012

Days with Precipitation One Tenth of an Inch or Greater, as reported by NOAA's National Climatic Data Center, Richmond station. http://www7.ncdc.noaa.gov/IPS/coop/coop.html.

| 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|------|------|------|------|------|------|
| 9/22/07 | 1/3/08 | 1/2/09 | 1/12/10 | 1/2/11 | 1/20/12 |
| 10/12/07 | 1/4/08 | 1/22/09 | 1/17/10 | 1/12/11 | 1/21/12 |
| 11/10/07 | 1/5/08 | 2/5/09 | 1/18/10 | 1/13/11 | 1/23/12 |
| 11/11/07 | 1/6/08 | 2/6/09 | 1/20/10 | 1/30/11 | 2/7/12 |
| 12/4/07 | 1/7/08 | 2/9/09 | 1/21/10 | 2/16/11 | 2/13/12 |
| 12/6/07 | 1/8/08 | 2/11/09 | 1/22/10 | 2/17/11 | 2/15/12 |
| 12/7/07 | 1/10/08 | 2/13/09 | 1/23/10 | 2/19/11 | 2/29/12 |
| 12/17/07 | 1/21/08 | 2/14/09 | 1/25/10 | 2/24/11 | 3/1/12 |
| 12/18/07 | 1/22/08 | 2/15/09 | 1/26/10 | 2/25/11 | 3/13/12 |
| 12/20/07 | 1/23/08 | 2/17/09 | 1/27/10 | 3/2/11 | 3/14/12 |
| 12/28/07 | 1/24/08 | 2/22/09 | 1/30/10 | 3/6/11 | 3/15/12 |
| 12/29/07 | 1/25/08 | 2/23/09 | 2/5/10 | 3/14/11 | 3/16/12 |
| | 1/26/08 | 2/24/09 | 2/6/10 | 3/15/11 | 3/17/12 |
| | 1/27/08 | 2/26/09 | 2/9/10 | 3/16/11 | 3/24/12 |
| | 1/28/08 | 3/1/09 | 2/12/10 | 3/18/11 | 3/25/12 |
| | 1/29/08 | 3/2/09 | 2/22/10 | 3/19/11 | 3/27/12 |
| | 1/31/08 | 3/3/09 | 2/23/10 | 3/20/11 | 3/28/12 |
| | 2/1/08 | 3/4/09 | 2/24/10 | 3/23/11 | 3/31/12 |
| | 2/2/08 | 3/5/09 | 2/26/10 | 3/24/11 | 4/1/12 |
| | 2/3/08 | 3/15/09 | 2/27/10 | 3/25/11 | 4/11/12 |
| | 2/19/08 | 3/16/09 | 3/2/10 | 3/26/11 | 4/12/12 |
| | 2/20/08 | 3/22/09 | 3/3/10 | 4/9/11 | 4/13/12 |
| | 2/21/08 | 4/7/09 | 3/10/10 | 4/13/11 | 4/26/12 |
| | 2/22/08 | 4/8/09 | 3/12/10 | 4/21/11 | |
| | 2/23/08 | 5/2/09 | 3/25/10 | 5/16/11 | |
| | 2/24/08 | 5/3/09 | 3/31/10 | 5/25/11 | |
| | 3/15/08 | 5/5/09 | 4/1/10 | 5/31/11 | |
| | 4/23/08 | 9/16/09 | 4/2/10 | 6/4/11 | |
| | 10/4/08 | 10/13/09 | 4/3/10 | 6/28/11 | |
| | 10/31/08 | 10/15/09 | 4/4/10 | 6/29/11 | |
| | 11/1/08 | 10/19/09 | 4/5/10 | 9/4/11 | |
| | 11/2/08 | 11/21/09 | 4/11/10 | 9/5/11 | |
| | 11/3/08 | 12/11/09 | 4/12/10 | 9/6/11 | |
| | 11/4/08 | 12/12/09 | 4/20/10 | 10/4/11 | |
| | 12/14/08 | 12/14/09 | 4/27/10 | 10/5/11 | |

| 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|------|------|------|------|------|------|
|      | 12/19/08 | 12/16/09 | 4/28/10 | 10/6/11 |  |
|      | 12/21/08 | 12/21/09 | 5/10/10 | 11/6/11 |  |
|      | 12/25/08 | 12/30/09 | 5/18/10 | 11/12/11 |  |
|      |      |      | 5/25/10 | 11/26/11 |  |
|      |      |      | 5/26/10 |      |  |
|      |      |      | 5/27/10 |      |  |
|      |      |      | 9/13/10 |      |  |
|      |      |      | 9/27/10 |      |  |
|      |      |      | 11/7/10 |      |  |
|      |      |      | 11/10/10 |      |  |
|      |      |      | 11/20/10 |      |  |
|      |      |      | 11/21/10 |      |  |
|      |      |      | 11/23/10 |      |  |
|      |      |      | 11/26/10 |      |  |
|      |      |      | 12/3/10 |      |  |
|      |      |      | 12/4/10 |      |  |
|      |      |      | 12/7/10 |      |  |
|      |      |      | 12/8/10 |      |  |
|      |      |      | 12/13/10 |      |  |
|      |      |      | 12/18/10 |      |  |
|      |      |      | 12/19/10 |      |  |
|      |      |      | 12/21/10 |      |  |
|      |      |      | 12/26/10 |      |  |
|      |      |      | 12/29/10 |      |  |

# Attachment 4: Water Quality Standards

| Parameter | Units | Water quality standard | Source |
|---|---|---|---|
| Arsenic Total | mg/L | 0.069 | Basin Plan |
| Cadium, Total | mg/L | 0.042 | Basin Plan |
| Chromium VI | mg/L | 1.1 | Basin Plan |
| Copper Total | mg/L | 0.0108 | Basin Plan, Site Specific Objectives |
| Cyanide Total (as CN) | mg/L | 0.0094 | Basin Plan, Site Specific Objectives |
| Lead Total | mg/L | 0.22 | Basin Plan |
| Mercury Total | mg/L | 0.0021 | Basin Plan |
| Selenium Total | mg/L | 0.29 | California Toxics Rule |
| Silver Total | mg/L | 0.0019 | Basin Plan |
| Zinc Total | mg/L | 0.09 | Basin Plan |
| PAHs | mg/L | 0.015 | Basin Plan |
| Nickel Total | mg/L | 0.0624 | Basin Plan, Site Specific Objectives |